UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BRUCE SMITH, JOANNE SMITH, | ) | |
| WALTER WUNDERLICH and | ) | |
| VICTORIA WUNDERLICH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:11-CV-2040-JAR |
| | ) | |
| CONOCOPHILLIPS PIPE LINE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for Class Certification (Doc. No. 47) and Defendant's Motions to Exclude Opinions of Dr. Richard Parent (Doc. No. 35) and Dr. Patrick Agostino. (Doc. No. 58) The motions are fully briefed and ready for disposition. By agreement of the parties, the motions were taken together and a hearing was held on October 3, 2013. On October 28, 2013, Defendant filed additional supplemental authority in support of its motions to exclude testimony of Dr. Agostino and in opposition to class certification. (Doc. No. 71) For the following reasons, Plaintiff's motion for class certification will be granted in part and denied in part, and Defendant's motions to exclude expert opinions will be denied.

**I. Background**[1]

Plaintiffs bring this putative class action for injunctive relief and damages resulting from petroleum contamination from a leak in a pipeline system now owned by Defendant dating back

---

[1] The facts are taken from Plaintiffs' complaint, as well as the other evidence submitted by the parties in briefing the motion for class certification.

1

to the 1960's. In May 2002, Defendant was notified of gasoline vapors in the basement of a residence at 16062 North State Route 94 in West Alton, Missouri, owned by Don and Dana Ellebracht. The pipeline system is adjacent to the Ellebracht property. Groundwater samples collected by Defendant on and around the Ellebracht property in June 2002 tested positive for benzene and methyl-t-butyl ether (MTBE). Thereafter, Defendant began supplying bottled drinking water to residents in West Alton. Defendant subsequently purchased the Ellebrachts' property, along with the properties of two neighboring families, the Tomlins and the Cowans, and demolished the homes in 2006. As part of a remediation plan, 4,000 yards of soil in the area were removed in 2007. The property is now surrounded by a chain-link fence and signs are posted restricting entry to authorized personnel. In 2009, the pipeline was taken out of service.

Plaintiff property owners allege that as a result of the leak, they have been exposed to byproducts of refined petroleum products in their water, including benzene, toluene, ethylbenzene and xylene (BTEX) and MTBE, that Defendant has failed and continues to fail to remediate the leak, and that contaminants remain in the soil and water, posing a health risk to surrounding property owners and diminishing property values. (First Amended Class Action Complaint (FAC), Doc. No. 21, ¶¶ 10-11, 15, 17-22)

Plaintiffs seek to certify a property damage class under Fed.R.Civ.P. 23(b)(2) and (3) and a medical monitoring class under Fed.R.Civ.P. 23(b)(3). Defendant opposes certification on the grounds that Plaintiffs cannot sufficiently establish that there are enough potential plaintiffs and fail to meet the other requirements of Rule 23(a) and (b). In addition, Defendant challenges Plaintiffs' proposed class definitions as overly broad.

**II. Legal Standard**

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974). Although "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," a court has no "authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982).

In order for this action to be maintained as a class action, Plaintiffs must satisfy the four requirements of Rule 23(a), often referred to as numerosity, commonality, typicality, and adequacy of representation, as well as one of the requirements of Rule 23(b). Glen v. Fairway Independent Mortg. Corp., 265 F.R.D. 474, 478 (E.D. Mo 2010). Although the court has broad discretion in determining whether to certify a class, in close cases courts should err in favor of certification because the class can be modified as the case progresses. In re Aquila ERISA Litigation, 237 F.R.D. 202, 207 (W.D.Mo. 2006) (citing In re Control Data Corp. Securities Litigation, 116 F.R.D. 216, 219 (D.Minn.1986)).

**III. Daubert motions**

In support of their motion for class certification, Plaintiffs submit the reports and testimony of their experts, geologist Patrick Agostino, Ph.D. and toxicologist Richard Parent, M.D. Plaintiffs retained Dr. Agostino to opine on the risk posed by pipeline releases, appropriate testing required to delineate the contamination, the areal and vertical distribution of hydrocarbons in soils and groundwater, and the persistence of petroleum releases in the subsurface environment. (Agostino Report, Doc. No. 59-1, p. 6) He concludes that the original plume resulting from the leak was larger in areal extent than the plume mapped in 2002, that the

3

leaded gasoline and diesel continue to contaminate soil and groundwater and remain a threat to the drinking water supply, and that a more aggressive remediation plan is required in West Alton to remove the free product and remediate the plume. (Id., pp. 15-17)

Plaintiffs retained Dr. Parent to opine on the relationship between general exposure to benzene and lead and the need for medical monitoring. He opines that "in consideration of the fact that the Ellebracht neighbors are assumed to have been exposed to both benzene and lead, that they should be monitored for early effects which may lead to leukemia from benzene or the development of behavioral anomalies and early dementia among other conditions described herein as a result of early exposure to lead." (Parent Report, Doc. No. 36-1, pp. 7-8)

Defendants move the Court to exclude the opinions of both Dr. Agostino and Dr. Parent or, in the alternative, for a full Daubert hearing on the issue of the admissibility of their testimony.

As a threshold matter, the parties disagree on the extent of the Daubert analysis at the class certification stage.[2] Defendant urges the Court to apply a rigorous Daubert analysis following the Seventh Circuit's approach in Messner v. Northstone Univ. Healthsystem, 669 F.3d 802, 814 (7th Cir. 2012), when considering whether Dr. Parent's and Dr. Agostino's

---

[2] There is disagreement among the circuit courts as to whether expert disputes related to class certification must be resolved before the court can certify a class. The Seventh and Eleventh Circuits have either explicitly held or suggested that Daubert is applicable at the class certification stage. See, Am. Honda Motor Co. v. Allen, 600 F.3d 813, 815-16 (7th Cir. 2010); Sher v. Raytheon Co., 419 Fed.Appx. 887, 890 (11th Cir. 2011). The Eighth Circuit has declined to adopt the formal requirements of Daubert. See, In re Zurn Pex Plumbing Prods. Liab. Litig. v. Zurn Pex, 644 F.3d 604, 611 (8th Cir. 2011). The Ninth Circuit concluded that Daubert did not apply to expert testimony at the certification stage of class action proceedings. Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 602 n.22 (9th Cir. 2010). In his majority opinion in Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, Justice Scalia noted, albeit in dictum, that the Ninth

opinions may be used to support Plaintiffs' request for class certification. In Messner, the court ruled that a full Daubert hearing and analysis is necessary on the issue of admissibility of expert opinions if the opinion is "critical" to class certification. Plaintiffs on the other hand argue that Defendant's request for a full Daubert hearing as to the admissibility of their experts' testimony is premature, relying on In re Zurn Pex Plumbing Prods. Liab. Litig. v. Zurn Pex, 644 F.3d 604 (8th Cir. 2011). In Zurn Pex, the Eighth Circuit took the middle ground, holding that expert disputes "concerning the factual setting of the case" should be resolved at the class certification stage only to the extent "necessary to determine the nature of the evidence that would be sufficient, if the plaintiff's general allegations were true, to make out a prima facie case for the class." Id. at 611 (quoting Blades v. Monsanto Co., 400 F.3d 562, 567 (8th Cir. 2005)).

Because the Court is bound to follow the precedents established by the Eighth Circuit, see Jay Packaging Group, Inc. v. Mark Andy, Inc., 2011 WL 208947, at *1 (E.D. Mo. Jan. 21, 2011) (citing Hood v. United States, 342 F.3d 861, 864 (8th Cir. 2003)), it need not determine at this stage whether Plaintiffs' experts' opinions will ultimately be admissible at trial. Zurn Pex, 644 F.3d at 613-14. For purposes of Plaintiffs' motion, the Court must simply determine to its satisfaction whether Plaintiffs' experts' testimony establish a Rule 23 requirement. Thus, Defendant's motions to exclude the opinions of Dr. Parent and Dr. Agostino will be denied.

**IV. Motion for Class Certification**

**A. Plaintiffs' proposed class definitions**

Before a proposed class may be certified, plaintiff must define it. "At a minimum, the description must be 'sufficiently definite that it is administratively feasible for the court to

---

Circuit's conclusion was likely erroneous, but separate and apart from whether the expert testimony itself advanced the respondents' case.

determine whether a particular individual is a member.'" Burkhead v. Louisville Gas & Elec. Co., 250 F.R.D. 287, 291 (W.D.Ky. 2008) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1760 (1986). See also, Lindsay Transmission, LLC v. Office Depot, Inc., 2013 WL 275568, at *3 (E.D. Mo. Jan. 24, 2013 ("[T]he plaintiff has the burden of showing 'that the class is indeed identifiable as a class.' ") (quoting Oshana v. Coca-Cola Co., 472 F.3d 506, 513 (7th Cir. 2006)). Here, Plaintiffs define the property damage class as "all persons who currently own property within a 0.25 mile radius of 16062 N. State Route 94 in West Alton, Missouri," and the medical monitoring class as "all persons who reside on a property within a 0.25 mile radius of 16062 N. State Route 94 in West Alton, Missouri and all people who resided in said properties since 2002."[3] Defendant challenges Plaintiffs' proposed class definitions as overbroad because they fail to require each plaintiff to have actually been exposed to contamination from the pipeline leak, or to demonstrate that their properties were actually impacted by the leak. (Mem. in Opp., Doc. No. 62, pp. 25-27)

When a plaintiff defines a class in geographic terms, courts often look for scientific or objective evidence that ties the spread of contamination to the proposed class boundaries. Burkhead, 250 F.R.D. at 291. See, e.g., Boggs v. Divested Atomic Corp., 141 F.R.D. 58, 61-62 (S.D.Ohio 1991) (certifying class where expert testimony about level of exposure up to geographical boundary established "reasonable relationship"). See also, Leib v. Rex Energy Operation Corp., 2008 WL 5377792 (S.D.Ill Dec. 19, 2008); LaBauve v. Olin Corp., 231 F.R.D. 632 (S.D.Ala. 2005). Conversely, where plaintiffs fail to produce evidence linking the proposed boundary to the environmental hazard, courts have denied certification. See, e.g., Burkhead, 250

---

[3] Plaintiffs initially sought certification of a class residing within a 1.1 mile site radius, but subsequently amended their class definitions to a smaller geographic area. (Doc. No. 52)

F.R.D. at 293-94 (concluding there was an insufficient evidentiary relationship where the class was defined as individuals residing within a two mile radius of plant but there was no evidence that contaminants might have spread in all directions from plant for a distance of up to two miles). See also, Duffin v. Exelon Corp., 2007 WL 845336, at *3 (N.D.Ill. Mar. 19, 2007); Daigle v. Shell Oil Co., 133 F.R.D. 600, 602-03 (D.Colo. Dec. 10, 1990).

At this stage Plaintiffs are not required to adduce definitive evidence about the extent and scope of the contamination. However, in order for the Court to conclude that there is a reasonable relationship between the pipeline leak and the proposed class area, Plaintiffs need some evidence that contamination was present in the class area. Id. This is not a merits issue. Kemblesville HHMO Center, LLC v. Landhope Realty Company, 2011 WL 3240779, at *5 (E.D.Pa. July 28, 2011) (citing Duffin v Exelon Corp., 2007 WL 845336 (N.D. Ill. Mar. 19, 2007) (expressly distinguishing between a determination that property damage had occurred (a merits issue) and a determination that properties in the class area were even potentially contaminated).

Plaintiffs assert the 0.25 mile radius is based on the outer extent where petroleum contaminants have been found in either soil or groundwater since 2002. (Mem. in Supp., Doc. No. 51, p. 18) They emphasize their conservative approach to defining the classes, even amending their original boundary from 1.1 miles to 0.25 miles. (Id.) To support their class boundary, Plaintiffs submit the results of three drinking water tests performed in 2011 (Doc. Nos. 51-45, -46, and -47) and the testimony of their expert, geologist Patrick Agostino, regarding the extent and scope of the contamination. (Agostino Report, Doc. No. 59-1)

In its opposition to class certification, Defendant argues Plaintiffs have no scientific evidence that the 1960's pipeline leak created a hydrocarbon plume larger than 250 feet, let alone

7

the 0.25 mile radius of their proposed class boundary. The drinking water tests cited by Plaintiffs, involving 11 properties within the proposed class area, came back clean with respect to any potential contamination (Def.'s Mem. in Opp., Doc. No. 62, pp. 3-4), and Dr. Agostino's opinion that the original contaminant plume was "considerably larger" than it is now, and "most likely" spread laterally to the north for a "long distance" (Agostino Report, Doc. No. 59-1, p. 13), is speculative and lacking a scientific basis.[4] (Mem. in Opp., pp. 9-10)

Plaintiffs reply that while the soil and groundwater sampling data is limited, such data clearly shows that petroleum contaminants reach at least 0.25 miles from the Ellebracht property. (Reply, Doc. No. 66, pp. 6-7) "Light non-aqueous phase liquid ("LNAPL") or free product liquid samples found by Defendant in monitoring wells on the West Alton site and analyzed by Battelle laboratories in July-August 2002 contained diesel fuel and leaded gasoline, both products reportedly transported in the pipeline. (Agostino Report, Doc. No. 59-1, pp. 2, 6; Agostino Depo., Doc. No. 65-3, 72:13-21; 73:17-25; 183:15-185:12) Testing done in August 2003 by the Missouri Department of Natural Resources shows the presence of BTEX in the area.[5] (Doc. No. 68) In addition, Defendant's own testing shows an increase in hydrocarbon contamination at the monitoring wells within the remediation site as recently as March 2010. (Doc. No. 59-1, pp. 14, 20) Moreover, the experts for both sides concede that contamination shifts continually. Plaintiffs

---

[4] As discussed *infra*, Defendant has moved to exclude the opinions of Dr. Agostino as speculative and lacking any scientific basis. At the class certification stage, however, the Court need not make a definitive determination on the admissibility of expert testimony. Zurn Pex, 644 F.3d at 613-14.

[5] Although the contaminants were not detected above the laboratory reporting limits, it is not appropriate for the Court to determine the level of BTEX and/or lead level that constitutes "contamination," or to determine what contamination levels constitute property damage for the purposes of this motion. Kemblesville HHMO Center, 2011 WL 3240779, at *7; Duffin, 2007 WL 845336, at *5.

contend that based on the testing to date, it is not possible to rule out the possibility that pockets of contamination exist, even within areas that Defendant claims are "clean." (Reply, Doc. No. 66, p. 7) On this record the Court finds sufficient preliminary evidence of contamination to support Plaintiffs' property class definition. See Cook v. Rockwell Intern. Corp., 151 F.R.D. 378, 383-84 (D. Colo. 1993).

With respect to Plaintiffs' medical monitoring class definition, however, Plaintiffs have offered no evidence of actual exposure. Meyer ex rel. Coplin v. Fluor Corp., 220 S.W.3d 712, 718 (Mo. 2007) (entitlement to the costs of medical monitoring requires plaintiff to show that exposure led to an increased risk of developing a particular disease and that medical monitoring is reasonably necessary for early detection and treatment). Plaintiffs' expert Dr. Parent testified about the relationship between general exposure to benzene and lead and the need for medical monitoring, but admitted in his deposition that he was not offering an opinion about specific exposure in this case. (Parent Depo., Doc. No. 36-2, 192:18-193:11) Compare, Cook, 151 F.R.D. 378, where a medical monitoring class area was defined with reference to geographical representations of exposure or dose levels which corresponded to average minimal cumulative doses received by segments of the exposed population. Without some evidence of actual exposure to benzene and/or lead, Plaintiffs' definition of the medical monitoring class is not sufficiently definite to permit analysis of the Rule 23 factors governing class certification.

**C. Rule 23(a)**

**(1) Numerosity**

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." "No single magic number exists satisfying the numerosity requirement." Behrend v. Comcast Corp., 245 F.R.D. 195, 202 (E.D. Pa. 2007) (internal citation omitted). Plaintiffs

9

represent that there are approximately 61 properties within the geographically defined class area, based on the number of residences and property sales since 2002. (Mem. in Supp., Doc. No. 51, p. 38) Defendant argues there is no evidence that more than five parcels - three of which are now owned by Defendant and none of which are inhabited - were ever impacted by the pipeline leak. (Mem. in Opp., Doc. No. 62, pp. 11-12)

As discussed above, the Court finds Plaintiffs have provided some evidence that contamination is present in the proposed class area. Again, at this stage Plaintiffs are not required to adduce definitive evidence about the extent and scope of the contamination. Moreover, whether Plaintiffs' properties were in fact contaminated is a merits argument not to be considered on a motion for certification. Bentley v. Honeywell Intern., Inc., 223 F.R.D. 471, 477 (S.D. Ohio 2004) (citing Eisen, 417 U.S. at 178).

**(2) Commonality**

The commonality determination requires a finding that "there are questions of law or fact common to the class." Rule 23(a)(2). This rule does not require that every question be common to the class, but merely that one or more significant questions of law or fact are common to the class. Hopkins v. Kansas Teachers Community Credit Union, 265 F.R.D. 483 (W.D.Mo. 2010) (quoting TBK Partners v. Chomeau, 104 F.R.D. 127, 130 (E.D.Mo.1985). Commonality is met if the class members' claims "derive from a 'common nucleus of operative facts.' " Id. (citing Cohen v. Uniroyal, Inc., 77 F.R.D. 685, 690 (E.D.Pa.1977)). A common nucleus of operative fact is usually found where the defendant has engaged in some standardized conduct towards members of the proposed class. Mejdreck v. The Lockformer Co., 2002 WL 1838141, at *3 (N.D.Ill. Aug. 12, 2002). Factual variations between class members' claims will not preclude

certification. Id. Plaintiffs have identified a number of common questions of law and fact, including:

> Whether the contamination identified emanated from the subject pipeline;
>
> Whether unremediated leaks from the subject pipeline remain in soil and groundwater;
>
> What knowledge Defendant had about petroleum leaks from the subject pipeline;
>
> Whether Defendant knew that unremediated petroleum leaks pose an environmental risk;
>
> Whether Defendant would have had documentation if assessment and remediation had occurred with respect to these old petroleum leaks;
>
> Whether Defendant has a policy in place to respond to old petroleum leaks;
>
> Whether Defendant has a duty to evaluate and assess whether old petroleum leaks remain in the soil and groundwater;
>
> Whether Defendant has a duty to completely remediate old petroleum leaks that remain;
>
> Whether Defendant's activities are sufficiently remediating the petroleum contamination;
>
> Whether the type of damages caused to Class Members' property by the leak and migration of petroleum products emanated from the subject pipeline;
>
> Whether Defendant has breached their ongoing duty to clean up all spills and leaks from the subject pipeline;
>
> Whether Class Members are entitled to injunctive relief requiring Defendant to fully remediate the remaining contamination;
>
> Whether Class Members are entitled to damages for loss of property value; and
>
> Whether Defendant's conduct rises to the level of willfulness so as to justify punitive damages.
> (Mem. in Supp., pp. 38-39)

Defendant argues there is no common nexus of law or fact between class members because the classes are not defined to include property that is actually contaminated. (Mem. in Opp., p. 13) Again, Defendant is improperly arguing the merits of the case. Plaintiffs allege Defendant allowed petroleum byproducts to contaminate the soil and groundwater in the area where all proposed class members live and have failed to remediate the contamination. It is this common course of conduct which allegedly caused the injury to all of the Plaintiffs. Therefore, Plaintiffs have established commonality.

**(3) Typicality**

The Eighth Circuit defines typicality as requiring "a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." Henke v. Arco Midcon, L.L.C., 2014 WL 982777, at *9 (E.D.Mo. March 12, 2014) (citing Chaffin v. Rheem Mfg. Co., 904 F.2d 1269 (8th Cir.1990)). Typicality and commonality are closely related and a finding of one generally compels a finding of the other. Canady v. Allstate Insurance Co., 1997 WL 33384270, at *6 (W.D. Mo. Jun. 19, 1997).

Plaintiffs contend this requirement is met because they, like the class members, own property within the class boundary. They continue to be concerned about the quality of their well water and have suffered a decrease in their property values. The relief Plaintiffs seek is identical to the relief sought for the class. (Mem. in Supp., p. 40) Here, the central event in all of the proposed class members' claims is the leak in the pipeline owned by Defendant. The class members' factual and legal theories are based on petroleum contamination resulting from the leak. Defendant argues that Plaintiffs' claims are not typical because they have no evidence that their properties are actually contaminated. But factual inconsistences between the class are not enough to defeat typicality. See Duffin, 2007 WL 845336, at *6 (typicality met where class

members' complaints arose from defendant's unauthorized release of water containing hazardous tritium, even though evidence showed many properties had little or no contamination). See also, Ludwig v. Pilkington North America, Inc., 2003 WL 22478842, at *3 (N.D.Ill. Nov. 4, 2003). Plaintiffs have demonstrated typicality.

**(4) Adequacy**

"The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class; and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." Canady, 1997 WL 33384270, at *7 (quoting Paxton v. Union National Bank, 688 F.2d 552, 562–63 (8th Cir.1982)). "The appropriate test for determining whether the interests of the class representatives and other members of the class are antagonistic is whether or not those interests may be deemed coextensive; a total identity of interests is not required." Id. " 'Coextensiveness' has been defined to mean that the plaintiffs and the class representatives 'share common objectives and legal or factual positions.' " Id.

Plaintiffs contend this requirement is met. They state their interests are aligned with class members' interests and would be otherwise included in the defined classes, both for property damages and medical monitoring. They are aware of their duties as class representatives and have been actively involved in the litigation to date. In addition, they have retained counsel to competently pursue this class action. (Mem. in Supp., p. 40)

In response, Defendant argues there is no evidence that either of the named Plaintiffs' properties or drinking water is contaminated from the 1960's leak. Because Plaintiffs cannot establish injury in fact, they do not have standing to bring their claims in this case. (Mem. in Opp., p. 15)

13

To show standing, Plaintiffs must allege they sustained "personal injury [-in-fact] fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Duffin, 2007 WL 845336, at *2-3 (quoting Johnson v. Allsteel, Inc., 259 F.3d 885, 887 (7th Cir.2001)). Plaintiffs allege their properties were contaminated by unremediated petroleum releases from a pipeline system now owned by Defendant. (FAC, ¶¶ 46, 52) According to Plaintiffs, the alleged contamination has interfered with the use of their property, diminished their property values, and potentially injured their health. (FAC, ¶¶ 28, 32, 49-53) Similar allegations have been found adequate to confer Article III standing. See, e.g., Duffin, 2007 WL 845336. Once standing is established by the named plaintiffs, there is no separate class standing requirement "in the constitutional sense." Id. (citing In re General Motors Corp. Dex-Cool Prods. Liab. Litig., 2007 WL 522300, at *4 (S.D.Ill. Feb. 16, 2007)). Rather, class standing is satisfied if plaintiffs demonstrate they meet Rule 23(a)'s requirements. Id. (citing Payton v. County of Kane, 308 F.3d 673, 681 (7th Cir.2002); Irving Trust Co. v. Nationwide Leisure Corp., 95 F.R.D. 51, 57 n. 6 (S.D.N.Y.1982) ("Generally, when the Rule 23(a) prerequisites are met, there will be standing, since those prerequisites demand that the plaintiff alleged injury resulting from a class wrong.").

As class representatives, Plaintiffs need only show they *would* be entitled to relief, if granted, not that they *will* be entitled to relief. Mejdreck, 2002 WL 1838141, at *5. The Court does not need to address the merits of the case but only needs to decide whether or not Plaintiffs can adequately represent the proposed class. Id. (Emphasis in original.) The entire class, including the named Plaintiffs, asserts the same legal theories based on the same general nucleus of operative facts. There is no indication Plaintiffs are antagonistic to the class or will face

defenses inapplicable to other class members. Under these circumstances, Plaintiffs have met the requirements of Rule 23(a)(4).

**B. Rule 23(b)**

**1. 23(b)(2)**

Class certification under Rule 23(b)(2) is appropriate "if classwide injunctive relief is sought when the defendant 'has acted or refused to act on grounds generally applicable to the class.'" DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1175 (8th Cir. 1995) (quoting Fed.R.Civ.P. 23(b)(2)). While class actions under Rule 23(b)(2) have no predominance or superiority requirements, class claims must be cohesive. Barnes v. American Tobacco Co., 161 F.3d 127, 143 (3rd Cir. 1998) ("Subsection (b)(2) 'by its terms, clearly envisions a class defined by the homogeneity and cohesion of its members' grievances, rights and interests.'") (quoting Holmes v. Continental Can Company, 706 F.2d 1144, 1155 (11th Cir. 1983)).

Here, Plaintiffs seek injunctive relief that would require Defendant to "take all steps necessary to completely clean up the properties of the class members, ridding these properties of any and all petroleum chemical residue originating from the underground pipeline," and "to test all properties [within the class area] on a regular basis for soil and water contamination." (FAC, ¶¶ d., e.) Defendant argues Plaintiffs' class lacks cohesiveness because most of the proposed class members' properties are not contaminated. Thus, class members would not benefit from any declaratory or injunctive order. (Mem. in Opp., pp. 16-17) In response, Plaintiffs contend that Defendant's pattern of conduct toward the class members has been consistent in this regard - contamination has been found in the area from the pipeline, yet Defendant has refused to test other properties for contaminants or to fully remediate the area. (Reply, p. 11)

It is sufficient under Rule 23(b)(2) if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate. Walters v. Reno, 145 F.3d 1032, 1047 (9th Cir. 1998), *cert denied*, 526 U.S. 1003 (1999).

**2. Rule 23(b)(3)**

Under subsection (b)(3), Plaintiffs must establish that the questions of law and fact common to the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Mayo v. UBS Real Estate Securities, Inc., 2011 WL 1136438, at *5 (W.D. Mo. Mar. 25, 2011) (quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997)). Defendant argues the predominance requirement has not been met because of the highly individualized nature of Plaintiffs' nuisance and negligence claims, as well as the defenses to those claims. (Mem. in Opp., pp. 18-22)

There is ample support for certifying a class action in a contamination case even though there may be individualized issues, including issues of damages. LeClercq, 2001 WL 199840, at *7 (citing Sterling v. Velsicol Chemical Corporation, 855 F.2d 1188, 1197 n10 (6th Cir. 1988) (and cases cited therein)). "Where the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy." Id. See also, Bates v. Tenco Svcs., Inc., 132 F.R.D. 160 (D.S.C.1990) (class action was superior because common questions including the cause of the contamination and the defendant's liability predominated over the individual questions of proximate cause and damages for each plaintiff); Yslava v. Hughes Aircraft Co., 845 F.Supp. 705, 713 (D.Az.1993) (common issues

16

predominated because factual and legal issues relating to the defendant's liability did not differ between the plaintiffs, and thus certification was appropriate); Boggs, 141 F.R.D. at 67 (rejecting defendant's argument that individualized nature of plaintiffs' claims made certification improper and finding that common issues of liability, including nature of the emissions, history of the plant, and the kinds of remedies to address actual and future emissions "overwhelm[ed] individualized issues").

Here, common issues predominate, namely, whether the contamination identified emanated from the subject pipeline, whether Defendant was thereby negligent, and whether Defendant's actions resulted in contamination to the properties located in West Alton. If these claims were tried separately the amount of repetition would be great.

Further, proceeding as a class action is superior to other methods for adjudication of this case. The proof regarding the history of the pipeline system, the leak, the impact on the soil and groundwater, possible remedies, etc. would be identical. See Boggs, 141 F.R.D. at 67 ("[i]t would be neither efficient nor fair to anyone, including defendants, to force multiple trials to hear the same evidence"). The court in LeClercq explained that repetitive discovery for individual cases on the same core issues would be wasteful for both the courts and the parties. 2001 WL 199840, at *7.

**V. Conclusion**

For the foregoing reasons, the motion for class certification of a property damage class will be granted and the motion for class certification of a medical monitoring class will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Class Certification [47] is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that the Court certifies a property damage class of:

> All persons who currently own property within a 0.25 mile radius of 16062 N. State Route 94 in West Alton, Missouri.

**IT IS FURTHER ORDERED** that Defendants' Motions to Exclude Opinions of Dr. Richard Parent [35] and Dr. Patrick Agostino [58] are **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs Bruce Smith, JoAnne Smith, Walter Wunderlich and Victoria Wunderlich are appointed as class representatives and The Simon Law Firm, P.C., and Campbell Law, LLC are appointed as lead counsel for the Class.

Dated this 31st day of March, 2014.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE